HIGGINS, Justice
 

 (concurring).
 

 The two fundamental issues involved in this case are (1) whether or not Act No. 157 of 1940 is constitutional and (2) if it is held constitutional, then, whether or not Order No. 28-B of the Conservation Commissioner establishing certain rules and regulations covering the Logansport Gas Field is valid.
 

 My views are in accord with those expressed in the main opinion — that the statute is constitutional.
 

 The plaintiff contends that the order of the Commissioner is illegal because he failed to make the basic finding of facts necessary to support the order.
 

 The record shows that after the notice and hearing, the -Department of Minerals, through its Director, on June 27, 1941, issued Order No. 28, covering the production of gas and the operation of gas wells in the Jeter Horizon of* the Logansport Field, DeSoto Parish, Louisiana. In that Order, it is stated “ * * * the Department of Minerals, from evidence submitted at the hearing and from a study of said field by engineers and geologists of the Department of Minerals now finds as follows: * * * (A comprehensive statement of the facts found concerning this field is then made.)
 

 When the law under which the Department of Minerals was operating was held
 
 *142
 
 unconstitutional by this court, the Conservation Commissioner, who was thereby restored to office, reviewed the record previously considered by the Director of Minerals, and, on September 5, 1941, ratified Order No. 28. On October 1, 1941, he issued emergency Order No. 28-A and approved and confirmed the facts found by the Director of Minerals in Order No. 28, and annexed a copy thereof and made it a part of his order.
 

 On October 16, 1941, after notice and hearing, the Conservation Commissioner issued Order No. 28-B, by authority of Act No. 157 of 1940, establishing substantially the same rules and regulations made under the previous orders for the purpose of conserving natural gas and preventing its waste, as defined by law, and avoiding the installation of unnecessary wells. While this order does not. again recite the facts found, it is clear from reading it that it is based upon the same finding of facts contained in the previous orders covering the same gas field. Therefore, there was a finding of fact's by the Conservation Commissioner.
 

 The next question is whether or not the evidence in the record supports the order. Aside from the expert testimony and the geological information contained in the record, it appears that a brief was filed, with our permission, in behalf of the United States Petroleum Co-Ordinator for War, as amicus curiae, with a view of showing how vital it was to our War effort that we conserve our natural resources, and particularly oil and natural gas and use every means to prevent any actual or threatened waste thereof. It was shown that on May 27, 1941, the President of the United States declared an Unlimited National Emergency. On May 28, 1941, the President, in an Executive Letter, appointed Honorable Harold L. Ickes to the office of Petroleum CoOrdinator for National Defense. In that letter, the President in great detail pointed out how indispensable it was to our National Defense Program that our natural resources and especially oil, natural gas, and petroleum products be conserved and any waste or threatened waste thereof be prevented, in order to meet our military and civilian needs. The subjects emphasized were “the elimination of the drilling of unnecessary wells in proven fields” and “the proper development, production and utilization of those reserves of crude oil and natural gas that are of strategic importance both in quality and location”. Economical and efficient production was also discussed and the Co-Ordinator was instructed to co-operate with the petroleum industry and advise with the officials of the States where oil and gas are produced. The same policy was to be pursued with reference to other vital defense materials.
 

 After the unprovoked and treacherous attack without warning by Japan upon us at Pearl Harbor on December 7, 1941, and subsequent to our active involvement in the War, the President, on April 20, 1942, wrote Mr. Ickes a letter changing the title of his office to “Petroleum Co-Ordinator ■for War”.
 

 This court has a right to take judicial notice of the National Emergency declared
 
 *144
 
 by the President and the fact that this Country is presently engaged in War. These two facts are to be taken into consideration together with the other evidence, in determining whether or not the order of the Conservation Commissioner is supported by the evidence as a measure designed for the purpose of conserving oil and gas and preventing their actual or threatened waste.
 

 On December 23, 1941, the War Production Board issued Order M-68 (6 Federal Register, 6687). As an Industry Branch of the War Production Board, the Petroleum Co-Ordinator for War found it necessary to invoke mandatory restrictions upon the spacing of new wells drilled for the production of either oil or gas. «The purpose of Order No. M-68 and its amendments is to prevent the drilling of unnecessary wells with consequent avoidance of waste, conservation of critical materials, and the utilization of them for drilling of wells which may discover new reserves of petroleum. Under Order No. M-68 and its amendments, no materials may be used for the drilling of any oil well on less than 40 acres, or any gas well on less than 640 acres, on or after December 23, .1941. The result of this is that the Conservation Commissioner could not grant a permit to the adjoining landowners of the plaintiff to drill offset gas wells on their properties. This is another^ important circumstance which must be considered in determining whether or not the evidence supports the finding of facts and the regulations made by the Conservation Commissioner. In short, if the Conservation Commissioner cannot grant to the adjoining landowners of the plaintiff the right to drill offset wells, because his authority is now subordinated to that of the Federal Government, during the Emergency or the War, the plaintiff would be at liberty to continue to drain the gas from the common reservoir to the detriment of the other property owners, who1 would be powerless to protect themsplves. This result would be manifestly inequitable and unjust to them. Any well which will not increase materially the total ultimate recovery from the gas pool is an unnecessary well. The drilling and completion of every unnecessary well invariably threatens to cause physical waste of gas and results in an inefficient and uneconomic drainage area for such well.
 

 In the light of all of the facts and circumstances of this case, it is my opinion that it cannot be said that the evidence, some of which was introduced subsequent to December 7, 1941, is insufficient to support the order of the Conservation Commissioner.
 

 The court having reached the conclusion that Act No. 157 of 1940 is constitutional and that Order No. 28-B of the Conservation Commissioner is legal, it is my opinion that it is unnecessary to pass upon the question of whether or not the provisions of Act No. 252 of 1924 are repealed by implication by Act No. 157 of 1940. Since it has been determined that the actions of the Conservation Commission under the provisions of Act No. 157 of 1940 are valid, the plaintiff would not have any right to insist that the Conservation Commissioner regulate his well under the provisions of Act No. 252 of 1924. As pointed 'out in the main opinion, the plaintiff’s
 
 *146
 
 well was in a new gas field and even though the Conservation Department regulated the established gas fields under the provisions of Act No. 252 of 1924, it cannot be said that the action of the Conservation Commissioner, in dealing with these two problems differently, was arbitrary and discriminatory. Therefore, in so far as this case is concerned, the court is not required to decide whether or not Act No. 157 of 1940 repealed Act No. 252 of 1924, in whole or in part.
 

 For these reasons, I concur in the main opinion;